# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **ELIZABETH DELGADO SANTOS,** | ) | |
| **RAFAEL OCASIO BARRETO,** | ) | |
| **BETHZAIDA CRESPO VICENTE, and IRIS OTERO,** | ) | |
| on behalf of themselves and all similarly situated individuals, | ) | |
| **Plaintiffs,** | ) | |
|  | ) | |
| **v.** | ) | **CIV. NO. 18-40111-TSH** |
|  | ) | |
|  | ) | |
| **FEDERAL EMERGENCY MANAGEMENT AGENCY,** | ) | |
| **WILLIAM BROCK LONG, THOMAS VAN ESSEN,** | ) | |
| **and ALEJANDRO DE LA CAMPA,** | ) | |
| **Defendants,** | ) | |
|  | ) | |

## ORDER ON MOTION FOR PRELIMINARY INJUNCTION
### August 30, 2018

## Background

The Plaintiffs are all individuals who evacuated Puerto Rico in the aftermath of

Hurricane Maria, which struck the island on September 20, 2017 causing catastrophic damage.

The Federal Emergency Management Agency ("FEMA") has been providing assistance to

thousands of residents of Puerto Rico displaced by Maria, including the named Plaintiffs. In

May, FEMA announced that as of June 30, 2018, it would discontinue Transitional Shelter

Assistance ("TSA") for such evacuees.[1] The Plaintiffs have filed suit against the Defendants

seeking to prevent the termination of benefits under the TSA program for themselves and other

---

[1] In simple terms, the TSA program provides direct funding to hotels and motels, which serve as shelters for individuals and families who are forced to evacuate their damaged or destroyed homes due to a natural disaster.

similarly situated persons. In their First Amended Complaint (Docket No. 28), they assert claims

for deprivation of their Fifth Amendment Due Process Rights (Count I), violation of the

Administrative Procedure Act ("APA"), 5 U.S.C. §§ 706(2)(A), (B), 5 U.S. C. § 706(1)(Counts

II-IV), deprivation of their Fifth Amendment Equal Protection Rights (Count VI) and

Discrimination in Disaster Assistance in violation of 28 U.S.C. §5151(a) and 44 C.F.R. § 7.3

(Count No. VII). Plaintiffs also seek a Declaratory Judgment (Count V).[2]

On June 30, 3018, Judge Sorokin entered a Temporary Restraining Order ("TRO"),

which I have continued until August 31, 2018 (allowing the Plaintiffs and the class to stay until

checkout time on September 1, 2018) to give the parties an opportunity to fully brief the

important and complex issues raised by Plaintiffs' First Amended Complaint and corresponding

motion for preliminary injunction. *See Continuation of Temporary Restraining Order*, dated July

3, 2018 (Docket No. 19), *Second Continuation of Temporary Restraining Order*, dated July 19,

2018 (Docket No. 38), and *Order Memorializing The Previously Granted Third Continuation of

Temporary Restraining Order*, dated August 22, 2018 (Docket No. 63).

This Order addresses Plaintiffs' request for a preliminary injunction, on behalf of

themselves and all similarly situated individuals, to extend the provision of the emergency

assistance which they are currently receiving. Specifically, Plaintiffs are asking that FEMA be

ordered to continue providing the Plaintiffs with TSA until all eligible individuals either receive

---

[2] On June 30, 2018, Plaintiffs filed a complaint (Docket No. 1) and simultaneously filed a motion for temporary restraining order and preliminary injunction (Docket No. 2).  On July 12, 2018, Plaintiffs filed a First Amended Complaint, as of right (Docket No. 28). By that pleading, named Plaintiffs Alian Asencio, Aracelis Velez Cruz, Denise Nieves, Yaritza De Jesus Lopez, Rosa Rivera, and Angel Lauriano Muñoz De Jesus were dropped from the suit while Elizabeth Delgado Santos and Rafael Ocasio Barreto were added.  Plaintiffs also asserted new claims for violation of their equal protection rights under the Fifth Amendment (Defendants' conduct has denied and continues to deny TSA evacuees from Puerto Rico equal protection under the law)(Count VI) and Discrimination in Disaster Assistance in violation of 28 U.S.C. §5151(a) and 44 C.F.R. § 7.3 (Count No. VII). Over the objection of the Defendants, I have determined that for purposes of Plaintiffs' motion for preliminary injunction, the First Amended Complaint is the operative document.

temporary housing or find permanent housing. For the reasons set forth below, Plaintiffs' request

for a preliminary injunction is *denied*.

## Facts

### Statutory and Regulatory Background

#### The Stafford Act

The Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C.

§§5121-5148 ("Stafford Act"), provides the statutory authority for the federal disaster response

activities of FEMA. Congress enacted the Stafford Act to provide "assistance by the Federal

Government to State and local governments in carrying out their responsibilities to alleviate the

suffering and damage which result from [major] disasters." *Id.* § 5121(b). The Stafford Act is

"designed to assist the efforts of [States affected by major disasters] in expediting the rendering

of aid, assistance, and emergency services, and the reconstruction and rehabilitation of

devastated areas." *Id.* § 5121(a).

The Stafford Act is triggered when the Governor of an affected State or Territory

determines that State and local resources are insufficient to respond to a disaster and asks the

President to declare an area a "major disaster." 42 U.S.C. § 5170. If the President declares a

"major disaster" or emergency, he retains the discretion to determine and designate the type of

assistance available and the areas eligible to receive assistance.  In any major disaster, the

President may—

> (1) direct any Federal agency . . . to utilize its authorities and the resources
> granted to it under Federal law . . . in support of State and local assistance efforts .
> . . [and]
>
> (4) assist State and local governments in the distribution of medicine, food, and
> other consumable supplies, and emergency assistance.;
>
> ….

and may "provide assistance essential to meeting immediate threats to life and property" including emergency shelter.

42 U.S.C. §§5170a , 5170b(a) and (a)(3)(B)(emphasis added).

In simpler terms, the President may authorize, among other things, various forms of "Public Assistance" directed at State and local governments to assist them in performing work to prevent immediate threats to life, as well as various forms of "Individual Assistance" that provide assistance directly to individuals impacted by a disaster event. 42 U.S.C. §§ 5170–5189b.

FEMA is the federal agency the President has charged with implementing and carrying out major disaster assistance under the Stafford Act. Section 408 of the Stafford Act grants the President authority to provide temporary housing assistance to "individuals and households who are displaced from their predisaster primary residences or whose predisaster primary residences are rendered uninhabitable...." 42 U.S.C. § 5174(a)(1). Under section 408, the President, through FEMA, may provide two types of temporary housing assistance: (1) financial assistance, which is intended to pay for renting alternate housing accommodations; and (2) "temporary housing units, acquired by purchase or lease, directly...." 42 U.S.C. § 5174(c)(1); *see* 44 C.F.R. §206.110. FEMA has adopted regulations that set forth policies and procedures for determinations of eligibility of applicants for public and individual assistance, eligibility of work, and eligibility of costs for assistance under sections 402, 403, 406, 407, 408, 421(d), 502 and 503 of the Stafford Act, 42 U.S.C. §§ 5170a, 5170b, 5172, 5173, 5174, 5188, 5192 and 5193.

The Stafford Act includes a limitation of liability provision which provides, in relevant part that:

The Federal Government shall not be liable for any claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or

duty on the part of a Federal agency or an employee of the Federal Government in
carrying out the provisions of this chapter.

42 U.S.C § 5148.

### Transitional Sheltering Assistance

TSA is a Public Assistance program authorized under section 403 of the Stafford Act.

The governing provision states that "Federal agencies may on the direction of the President,

provide assistance essential to meeting immediate threats to life and property resulting from a

major disaster..."   42 U.S.C. § 5170b(a).  More specifically, section 403 authorizes FEMA to

provide assistance for immediate threats, including emergency shelter. § 5170b(a)(3)(B). Such

work is typically executed by local governments or nonprofits through use of congregate

shelters. TSA is also intended to provide sheltering assistance for survivors whose homes are

either uninhabitable or inaccessible due to disaster-related damage. The goal of the program is to

reduce the number of survivors housed in congregate shelters. TSA is a Public Assistance

program provided through direct federal assistance.  Therefore, FEMA directly implements the

sheltering assistance and the program is subject to a cost share with the requesting State or

Territory. *See* 42 U.S.C. §5170b(b).

As provided by regulation and FEMA's internal policies, FEMA does not provide

financial assistance through the TSA program directly to individuals. Before TSA can be

implemented, this form of assistance must be requested by the State or Territory, and the

applicable Presidential declaration must include a section 403/502 –Category B (Emergency

Protection Measures) and a section 408 designation, making those particular forms of assistance

available. The initial period of TSA assistance is typically 5 to 14 days from the date TSA is

authorized by FEMA's Assistant Administrator for Disaster Assistance. The period of assistance

may be extended, in 14-day intervals, up to six months from the date of declaration upon request

by the State.

Individuals and households may be considered eligible for TSA assistance if:

• The individual or household registers with FEMA for assistance;

• The individual or household passes identity verification;

• The individual or household's pre-disaster primary residence is located in a
geographic area designated for TSA;

• As a result of the disaster, the individual or household is displaced from the pre
-disaster primary residence; and

• The individual or household is unable to obtain lodging through another
source.

FEMA's internal policies further provide that transitional sheltering ends once the period

of assistance interval expires unless there has been an extension requested by the State and

granted by FEMA in its discretion.

<u>Individual Assistance/Temporary Housing Assistance</u>

Distinct from the section 403 TSA program is section 408 of the Stafford Act, which

authorizes FEMA to provide direct assistance to individuals and households in response to a

major disaster or emergency declared by the President:

 [T]he President, in consultation with the Governor of a State,
may provide financial assistance, and, if necessary, direct services, to individuals
and households in the State who, as a direct result of a major disaster, have
necessary expenses and serious needs in cases in which the individuals and
households are unable to meet such expenses or needs through other means.

42 U.S.C. § 5174(a)(1) (emphasis added).  So called "Individual Assistance" ("IA") available

under section 408 may include, *inter alia*, financial assistance to rent alternative housing,

assistance for repairs to or replacement of homes damaged or destroyed by the disaster, and

financial assistance for disaster-related needs such as replacement of personal property. *See* 42 U.S.C. §§ 5174(c), (e).

One form of IA is temporary housing assistance ("THA"), either in the form of financial assistance to "rent alternate housing accommodations, existing rental units, manufactured housing, recreational vehicles, or other fabricated dwellings …  [and] may include the payment of the cost of utilities, excluding telephone service." *Id.* §5174(c)(1)(A). Another form of THA is direct assistance whereby temporary housing units such as trailers and mobile homes. *Id.* §5174(c)(1)(B).

### Hurricane Maria and its Aftermath

On September 20, 2017, Hurricane Maria, a Category 5 storm, made landfall on the Caribbean island of Puerto Rico, a territory of the United States with over 3.4 million residents. That same day, President Donald J. Trump issued a major disaster declaration for the island. On October 25, 2017, the Governor of Puerto Rico formally requested that FEMA provide TSA for Puerto Ricans displaced by Hurricane Maria.  Puerto Rico certified that it was responsible for the non-Federal cost share of all FEMA direct Federal assistance delivered under the Public Assistance program. On October 30, 2017, FEMA approved the request submitted by Governor Roselló for section 403 TSA and provided Puerto Ricans displaced by Hurricane Maria short-term sheltering that lasted for an initial term of 75 days, beginning on October 31, 2017 and ending on January 13, 2018.

On December 23, 2017, at the request of the Governor, FEMA agreed to extend the TSA program through March 20, 2018, an additional 66 days. On March 8, 2018, again at the request of the Governor, FEMA agreed to further extend the TSA program through May 14, 2018, an additional 55 days. On May 3, 2018, again at the request of the Governor, FEMA agreed to a

final extension of the TSA program until June 30, 2018, an additional 47 days. In his letter

seeking the request, Governor Roselló stated that he was seeking the extension, in part, so that

those receiving assistance could stay in the continental United States in a fixed location long

enough for their children to finish the school year before returning to Puerto Rico.  Moreover, by

June 30, 2018, all of the congregate sheltering in Puerto Rico had closed. As of June 30, 2018,

the TSA program had provided support to Puerto Rico for 242 days. This Court has since

ordered that the TSA program be extended through August 31, 2018, an additional 62 days.

At all times throughout the duration of the TSA program, Puerto Rico was informed and

acknowledged that the TSA program is intended to provide "short-term sheltering." When

FEMA granted the third extension on May 3, 2018, FEMA stated to the Governor and to the

public that no further extensions of the program would be granted.  FEMA's intended end date

for the TSA program aligned with the end of the 100% cost share between FEMA and Puerto

Rico, which was extended by the President  for 240 days from the disaster declaration and is now

a 90% FEMA/10% Puerto Rico share in the costs for certain types of "emergency work," which

includes the TSA program. Therefore, effective June 30, 2018, Puerto Rico is responsible for

covering 10% of the cost of all emergency work, including the TSA program. Governor Roselló

did not request a further extension of the TSA program beyond the June 30, 2018 termination

date.  Any such extension would have been subject to the new cost-share arrangement.

In total, 7,032 TSA eligible applicants checked into participating TSA hotels since the

genesis of the program. As of July 5, 2018, 1,006 eligible applicants remained at participating

TSA hotels. To date, since the declaration disaster for Hurricane Maria, FEMA has disbursed

over $2.4 billion in Public Assistance grants, over $1.1 billion for Individuals and Households,

and over $92 million in implementing the TSA program.

## Discussion

In deciding a motion for a preliminary injunction, "a district court weighs four factors: (1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing an injunction will burden the defendants less than denying an injunction would burden the plaintiffs; and (4) the effect, if any, on the public interest." *Jean v. Massachusetts State Police*, 492 F.3d 24, 26–27 (1st Cir. 2007); *Quincy Cablesystems, Inc. v. Sully's Bar, Inc.*, 640 F. Supp. 1159, 1160 (D.Mass.1986).

### Likelihood of Success on the Merits

The Defendants assert that Plaintiffs cannot show they are likely to succeed on the merits of their claims because (1) under the Stafford Act, FEMA is immune from all non-constitutional claims, including Plaintiffs claims under the APA; (2) the Court lacks jurisdiction over Plaintiffs' claims for injunctive relief because the government has not waived its sovereign immunity;(3) Plaintiffs' procedural due process claims fails because they do not have a protected property interest in continued TSA until such time as the obtain THA;  (4) Plaintiffs' substantive due process claim fails because Plaintiffs do not have a recognized liberty or property interest in housing and FEMA's discontinuation of the TSA program does not shock the conscience,  (5) the remedy which Plaintiffs seek, *i.e.,* the implementation of FEMA's Individuals and Households Program, *i.e.,* section 408 assistance, is already in place; and (6) Plaintiffs' Equal Protection and discrimination claims were not part of their original complaint, or their emergency motion for a TRO or preliminary injunction and therefore, should not be considered by the Court. If they are considered, the claims fail because Plaintiffs cannot establish that there were treated differently from applicants seeking relief in entirely different disasters, that is, since

every disaster is unique, they cannot establish that they are similarly situated to those other

applicants.

<u>Plaintiffs' Due Process Claims</u>

Procedural Due Process

The Fifth Amendment to the United States Constitution guarantees that the federal

government will not deprive its citizens of property without due process of law. U.S. Const.

amend. V. To prevail on their procedural due process claim, Plaintiffs must first establish that

they have a property interest in continued TSA, which is protected by the Constitution. "Property

interests are not created by the constitution itself. 'Rather, they are created and their dimensions

are defined by existing rules or understandings that stem from an independent source' and 'that

secure certain benefits and that support claims of entitlement to those benefits.'" *Ridgely v. Fed.*

*Emergency Mgmt. Agency*, 512 F.3d 727, 735 (5th Cir.2008) (citation to quoted case omitted).

Government benefit programs give rise to a property interest— but only when a claimant has an

entitlement to the benefit:

> The 'mere existence of a governmental program or authority empowered
> to grant a particular type of benefit to one such as the plaintiff does not give the
> plaintiff a property right, protected by the due process clause, to receive the
> benefit, absent some legitimate claim of entitlement—arising from statute,
> regulation, contract, or the like—to the benefit."

*Id.* (citation to quoted case omitted).

Plaintiffs assert they have a property interest in continued assistance under the TSA

program protected by the Due Process Clause through either the Stafford Act and its regulations,

or an independent source such as FEMA's conduct in in administering the housing assistance

programs.  They also assert that because they were found eligible for assistance under the TSA

program, they are "entitled" to THA benefits. FEMA, on the other hand, argues that the

assistance provided to the Plaintiffs under the TSA program is not an entitlement— it is a discretionary benefit, which is not afforded protection under the Due Process Clause.

*Whether the Stafford Act or Its Accompanying Regulations Create a Property Interest in Continued TSA Benefits*

Plaintiffs assert that FEMA must continue the TSA program until such time as they transition into longer-term THA because the enabling statute and regulations give them a claim of entitlement to such benefits (and therefore, create a property interest protected by the Constitution).  In support, Plaintiffs cite to *Ass'n of Cmty. Orgs. For Reform Now, Inc. v. Fed. Emergency Mgmt. Agency,* 463 F.Supp.2d 26 (D.C. D.C. 2006) in which the court granted injunctive relief to thousands of evacuees of Hurricanes Katrina and Rita whose section 403 benefits had been terminated and who also had been denied section 408 benefits.[3] Specifically, the court found that the plaintiffs/evacuees had "a protectable property right in the housing assistance administered by FEMA which cannot be deprived without due process of law." However, as pointed out by FEMA, that decision was appealed to the D.C. Circuit Court of Appeals and was, effectively, overturned. As part of its appeal, FEMA sought a stay of the of the lower court's order requiring it to immediately reinstate section 403 TSA benefits and to pay TSA benefits that the evacuees would have been entitled to from September 1, 2006 (the date FEMA terminated the benefits) to November 30, 2006 (the date that the court issued its order requiring FEMA to restore such benefits).  The D.C. Circuit granted the stay. *See Ass'n of Cmty. Organizations for Reform Now, Inc. v. Fed. Emergency Mgmt. Agency,* No. 06-5403, 2006 WL

---

[3] The evacuees had sought a TRO to prevent termination of their section 403 benefits, which was denied by the court. However, the court strongly advised FEMA to keep the section 403 benefits in place until a final ruling issued on the plaintiffs' request for a preliminary injunction.  Nonetheless, FEMA terminated all but 113 households and two of the named plaintiffs in that case—for them, FEMA extended assistance under the TSA program for thirty additional days.

3847841, at *1 (D.D.C. Dec. 22, 2006).  In denying plaintiffs/appellees motion for

reconsideration, the D.C. Circuit stated:

> Upon reexamination of the parties' submissions relating to the motion for stay, we
> doubt plaintiff-appellees are likely to succeed on their claim that they have a
> property right to benefits under section 403, which FEMA has terminated and
> which the district court awarded as a remedy. Insofar as plaintiff-appellees claim
> a property right in section 408 benefits, which they have neither received nor
> shown their eligibility for, we find it likely that *Heckler v. Lopez*, 463 U.S. 1328,
> 104 S. Ct. 10, 77 L. Ed. 2d 1431 (1983), prevents this court from upholding the
> district court's injunction.

*Ass'n of Cmty. Orgs. for Reform NOW, Inc. v. Fed. Emergency Mgmt. Agency,* 2007 U.S. App.

LEXIS 929, *1-2 (D..D.C. Jan. 16, 2007).  The injunction was ultimately vacated after the appeal

was voluntarily dismissed. *See Ass'n. of  Cmty. Orgs. for Reform Now, Inc. v. Fed. Emergency*

*Mgmt. Agency,* No. 06-5403, 2007 US App Lexis 929 (D.C. Cir. Apr. 30, 2007).[4] While the D.C.

Circuit's *per curiam* unpublished opinion cannot be cited as binding precedent, it does

undermine Plaintiffs' reliance on the district court's *Acorn* ruling. Plaintiffs' suggestion that the

D.C. Circuit was addressing the court's authority to *reinstate* benefits as opposed to terminating

them as in this case, is a distinction without meaning.

More to the point, Plaintiffs' argument is undermined by the express language of sections

403 and 408 of the Stafford Act, which speak in discretionary terms, not absolutes: "Federal

agencies *may* on the direction of the President, provide assistance essential to meeting immediate

threats to life and property resulting from a major disaster..."   42 U.S.C. § 5170b(a)(emphasis

added).  Likewise, section 408 contains a permissive grant of authority to FEMA to provide

assistance, "the President, in consultation with the Governor of a State, *may* provide financial

---

[4] As previously noted, in support of their argument that they have a property interest in section 403 benefits, Plaintiffs cited to the district court's ruling in *Acorn* granting injunctive relief to the plaintiffs/evacuees. Counsel for the Plaintiffs now acknowledge that the injunction was vacated by the D.C. Circuit. I accept counsels' representation that they were unaware of the D.C. Circuit's opinion, which was unpublished, and did not mean to mislead the Court.

assistance, and, if necessary, direct services, to individuals and households in the State who, as a direct result of a major disaster, have necessary expenses and serious needs in cases in which the individuals and households are unable to meet such expenses or needs through other means." 42 U.S.C. § 5174(a)(1)(emphasis added).  In interpreting these provisions, this Court is not writing on a clean slate. As other courts have held, neither the language of the Stafford Act nor the implementing regulations use mandatory language. *See, e.g., Ridgely*, 512 F.3d at 735-36; *see also Pride v. FEMA*, Civ. No. 1:1CV22-HSO-JMR, 2013 WL 6048153 (like section 408 financial assistance benefits, section 408 direct housing benefits are discretionary and therefore, there is not constitutionally protected property interest in receiving such benefits); *Cf. Konashenko v. Fed. Emergency Mgmt. Agency*, No. 12-CV-3034 SJF WDW, 2014 WL 1761346, at *8 (E.D.N.Y. Apr. 29, 2014)(since FEMA had discretion to decide whether to award plaintiff funds for the sea wall destroyed by Tropical Storm Irene, she had no reasonable expectation that she would get the benefit, and therefore, there is no protected property interest in the benefits themselves).

Plaintiffs point out that section 403 does not include a termination date for benefits—suggesting that Congress thus intended that once granted, TSA continues until such time as the applicant is transitioned into THA.  However, as the *Ridgely* court stated with respect to an analogous argument regarding continued entitlement to section 408 assistance: "it is unsurprising that no termination provision can be found in section 408 or the regulations, as such a provision would only be necessary if there were a stream of benefits to terminate." *Id.,* at 739. Similarly, given that section 403 and its regulations do not mandate that assistance be provided indefinitely once awarded, or at least until the applicant is transition into the THA program, there is no need for a termination provision.

I agree with FEMA that Plaintiffs' assertion that they have an entitlement to continued

TSA benefits is even more tenuous in this case than in *Ridgely,* which is a factually similar case.

In this case, the Governor of Puerto Rico has not requested that assistance under the TSA

program be extended.[5]  I find this of importance given how the program is structured.[6]  Unlike

section 408 benefits, the TSA program is a Public Assistance program, that is, FEMA is

providing assistance to Puerto Rico, not the individual Plaintiffs. While the federal government

initially pays 100% of the costs associated with the program, as of June 30, 2018, Puerto Rico is

required to pay 10% of the costs, while the federal government continues to pay 90%. This

amount is set by the President and cannot be altered.  Thus, should this Court find that the

Plaintiffs are entitled to continued TSA benefits, it would be requiring Puerto Rico to incur

monetary obligations which it to date, it has not agreed to take on. While it is not clear to me that

this result should play a factor in the analysis of whether Plaintiffs have an entitlement to

continued TSA benefits, I agree with FEMA that it at least raises the question of whether the

Plaintiffs themselves have a legitimate "claim" to such benefits-- particularly in light of the

---

[5] Plaintiffs' counsel represented at the hearing that media reports establish that since this case commenced, the Governor of Puerto Rico has repeatedly stated that he is in favor of the TSA benefits being extended.  While I have no reason to doubt counsel's representation, on the record before me, the Governor has not officially requested that the TSA program be continued.

[6] I agree with Plaintiffs that 44 C.F.R. § 206.255 does not necessarily require a state or local official to submit a request for continued assistance under section 403. However, FEMA also relies on its internal policy, in particular its Public Assistance and Policy Guide ("PAPPG"), in support of its contention that extension of TSA benefits in this case requires a request from the Governor of Puerto Rico. First, FEMA's policy to require an express request for TSA benefits makes sense given that the cost sharing arrangement mandated under section 403 and its regulations, discussed *infra*.  Additionally, Plaintiffs' argument that the PAPPG itself does not require the Governor of Puerto Rico to seek an extension because nowhere in the policy does it require that such a request be made by the "governor" is specious. The PAPPG requires that "State, Territorial, Tribal, and local government Applicants" *must* submit a request for funding for non-congregate environments (such as hotels). *See Id.*, at pp. 66-67. Given that the "applicant" is a governmental entity, in this case a Territory, the person making the request must necessarily be the Governor, or someone else with authority to bind it.

previously cited authority finding that there is no protected property interest in section 408

benefits, which are paid directly to disaster victims.

For the reasons stated above, I find that the Plaintiffs have not established they have a

protected interest in receipt of TSA benefits under the Stafford Act and its accompanying

regulations. Furthermore, that the Plaintiffs have been deemed eligible for assistance under the

TSA program does not create a property interest in *continued* assistance under that program. *Cf.*

*Ridgley*, 512 F,3d at 736 (given that section 408 and the regulations do not provide entitlement to

financial assistance, that plaintiffs were previously found eligible for assistance is of no matter).

Additionally, I find the *Ridgley* court's reasoning persuasive in denying Plaintiffs' assertion that

they have a property interest in obtaining section 408 benefits.

*Whether Plaintiffs have a Property Interest in continued assistance under the TSA Program as a
result of  FEMA's Conduct in in administering the Program*

Plaintiffs' assertion that FEMA's conduct and actions have created an expectation of

continued TSA benefits fares no better.  More specifically, Plaintiffs assert that FEMA's policies

and practices in regards to carrying out the TSA program creates a property interest in their

continued receipt of TSA, until such time as they are transitioned into the THA program.

Plaintiffs acknowledge that on the record before me, there is insufficient evidence to make a

determination on this claim.  Plaintiffs, therefore, ask the Court continue the TRO and grant a

period of fact finding followed by an evidentiary hearing.  I agree with the Plaintiffs that on this

record, they have not established a likelihood of success on the merits this issue. On the contrary,

the rules and regulations cited by the Defendants establish that FEMA requires certification from

the State, Territory or local government whose citizens seek initial or continuing disaster relief.

Moreover, those policies and regulations make clear that the disaster relief does not continue

indefinitely, but rather is terminated when FEMA, in its discretion, determines that assistance is

no longer necessary. It is possible that further discovery will shed light on FEMA's practices and policies sufficient to permit the Plaintiffs to raise a triable issue as to whether such policies and practices create a property interest in continued TSA. However, Plaintiffs have failed to establish on the record as is, or to convince the Court that upon obtaining such further discovery, they are likely to success on the merits of this claim. [7]

I find that the Plaintiffs have failed to establish that they have a protected property interest under sections 403 and 408 of the Stafford Act. For that reason, it is not necessary for me to address their assertion that the notices they have received (to the extent that they have received notice) are inadequate— primarily because the notices do not provide any information regarding their right to appeal, or their right to housing or transitional assistance. For the reasons stated, I find that Plaintiffs are unlikely to succeed on the merits of their procedural due process claim.

## Substantive Due Process

Like their procedural due process claim, to state a claim for violation of their substantive due process rights, Plaintiffs must first establish that they have "a valid property interest in a benefit that was entitled to constitutional protection… ." *Konashenko*, 2014 WL 1761346, at *10; *see also Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 8 (1st Cir. 2005)(as in procedural due process context, plaintiff must, as a condition precedent to stating a claim, identify a constitutionally protected interest in life, liberty or property). I have previously

---

[7] Plaintiffs' request that the Court extend the TRO while further discovery and an evidentiary hearing is conducted on this issue is based on their reading of the Fifth Circuit's ruling in *Ridgley*. I agree with the Plaintiffs that the Fifth Circuit recognized that FEMA's policies and procedures could create a property interest in continued benefits under section 408; the court remanded the case for the parties to conduct discovery on that issue and for the district court to hold an evidentiary hearing. However, in doing so, the court vacated the lower court's grant of a preliminary injunction in favor of the plaintiffs, which ordered that FEMA continue rental assistance for victims of Hurricanes Katrina and Rita, because it found that the plaintiffs had not established a likelihood of success on the merits. Likewise, I find that the Plaintiffs are entitled to further develop this claim, however, given that I do not find that, even accepting their arguments, they have shown a likelihood of success on the merits, the TRO shall not remain in place.

found that Plaintiffs have failed to establish that they have a property interests in continuing

benefits under section 403 and/or obtaining benefits under section 408 of the Stafford Act.

Therefore, their substantive due process claim also fails. Moreover, "[t]o establish a substantive

due process claim, a plaintiff must demonstrate an 'abuse of government power that shocks the

conscience' or 'action that is legally irrational in that it is not sufficiently keyed to any legitimate

state interests.'" *Collins v. Nuzzo*, 244 F.3d 246, 250 (1st Cir. 2001).  Little need be said on this

issue, simply put, Plaintiffs cannot establish that FEMA's discontinuance of their TSA benefits

"shocks the conscience," for substantive due process purposes, *see Avalos v. City of Glenwood,*

382 F.3d 792, 800 (8th Cir. 2004)(actionable substantive due process claims involve a " 'level of

... abuse of power' ... 'so "brutal" and "offensive" that [they do] not comport with traditional

ideas of fair play and decency), or  is "legally irrational in that it is not keyed to any legitimate

[government] interest." *See Amsden v. Moran,* 904 F.2d 748, 754 n.5 (1st Cir. 1990). Therefore,

Plaintiffs request for injunctive relief based on their claim for violation of their substantive due

process rights is denied.

Plaintiffs' Equal Protection Claims

Plaintiffs assert that the Defendants have violated their right to equal protection of the

laws by discriminating against them on the basis of race, national origin and kind of American

citizenship by providing a lesser level of housing assistance because they are Puerto Rican[8].  The

Equal Protection Clause of the Constitution requires that all persons *similarly situated* be treated

in the same manner. In order to establish a violation of the Equal Protection Clause, a plaintiff

must "show both (1) that they were treated differently from other similarly situated individuals,

and (2) that such differential treatment was based on 'impermissible considerations such as

---

[8] Defendants have cited authority questioning whether "Puerto Ricans" are a protected class.  For purposes of this Order, I assume that they are a protected class.

race… .'" *Harlen Assocs. v. Inc Village of Mineola,* 273 F.3d 494, 499 (2[d] Cir. 2001)(citation to

quoted case omitted). "Conclusory allegations of selective treatment are insufficient to state a

claim. Rather, a plaintiff must allege purposeful and systematic discrimination by specifying

instances in which [the plaintiff] [was] singled ... out for unlawful oppression in contrast to

others similarly situated.'" *Id.* at 573 (internal quotation marks and citation to quoted case

omitted). *Laday v. Ramada Plaza Hotel Laguardia*, No. 07-CV-0450 (BMC), 2007 WL 526613,

at *4 (E.D.N.Y. Feb. 13, 2007).

> The formula for determining whether individuals or entities are 'similarly
> situated' for equal protection purposes is not always susceptible to precise
> demarcation. *See* [*Coyne v. City of Somerville*, 972 F.2d 440, 444–45 (1st Cir.
> 1991)] ("[T]he 'line between sufficient facts and insufficient conclusions is often
> blurred.' ") … [H]owever, '[t]he test is whether a prudent person, looking
> objectively at the incidents, would think them roughly equivalent and the
> protagonists similarly situated. Much as in the lawyer's art of distinguishing
> cases, the 'relevant aspects' are those factual elements which determine whether
> reasoned analogy supports, or demands, a like result. Exact correlation is neither
> likely nor necessary, but the cases must be fair congeners. In other words, apples
> should be compared to apples.'

*Barrington Cove Ltd. P'ship v. Rhode Island Hous. & Mortg. Fin. Corp.*, 246 F.3d 1, 8 (1st Cir.

2001).

Plaintiffs have cited to what they claim are "stark differences" in FEMA's treatment of

victims of Hurricanes Harvey and Irma versus its treatment of Puerto Rican victims of Hurricane

Maria.  More specifically, they allege that Hurricane Harvey and Irma victims received seven

extensions of TSA benefits whereas Plaintiffs received only three, which amounted to two

months of additional benefits to victims of Hurricanes Harvey and Irma. They also cite to the

fact that FEMA had approved over twenty-two times the amount of financial assistance for

victims of Hurricane Harvey as it did in the same amount of time for victims of Hurricane Maria.

However, Plaintiffs fail to address how the three hurricanes impacted the areas which were

affected, what the amount of property damage from the three storms and the overall financial

impact on the affected areas.  Plaintiffs do acknowledge, but then downplay the fact that there

were twice as many people impacted by Hurricane Harvey (7.6 million) than were impacted by

Hurricane Maria (3.8 million), and over six times as many people were affected by Hurricane

Irma (19.3 million). Moreover, as pointed out by FEMA, every disaster is unique and requires

different responses.  For example, Hurricanes Harvey and Irma hit the mainland, while Hurricane

Maria hit Puerto Rico, which is an island and is more logistically difficult to reach and assess.

FEMA also points out that the damage sustained in each hurricane varied: Hurricane Harvey

caused mostly flooding damage while Hurricane Maria caused mostly wind damage. These are

only some difference which undermine Plaintiffs' equal protection claim—*Defendants'*

*Supplemental Brief* (Docket No. 56) details many more.  Simply put, as the record currently

stands, Plaintiffs have failed to make out a viable equal protection claim because they have not

established either that they were similarly situated to other hurricane victims, and even if they

were, that they were treated differently. Therefore, I finds that they are unable to establish a

likelihood of success on the merits with respect to their Equal Protection Clause claim.[9]

## Plaintiffs' Discrimination Claim

Plaintiffs assert that as Puerto Ricans, they have been discriminated against under the

Stafford Act in violation of 42 US.C. §5151(a) (barring discrimination based on race, color,

religion, nationality, sex, age, disability, English proficiency, or economic status.)  I agree with

Defendants that in their initial briefing of this claim, Plaintiffs, at best, make conclusory

allegations that discontinuance of the TSA program constitutes discrimination against them

---

[9] In their First Amended Complaint, Plaintiffs raise both a disparate treatment and a disparate impact claims.  However, in their memorandum, they brief only the disparate treatment claim.  Therefore, I find that for purposes of their motion for preliminary injunction, they have waived their disparate impact claim.

based on their race, color, English proficiency, or economic status.[10] In their supplemental

memorandum, they allege that they have been the victims of disparate treatment.  They then

assert that based on their allegations set forth in the First Amended Complaint, they have made a

*prima facie* case of disparate treatment and therefore, the burden shifts to the Defendants to

establish, through admissible evidence, that the allegedly unlawful action was taken for a

legitimate non-discriminatory reason. If the Defendants do so, they assert that the burden then

shifts back to them to show that the Defendants' proffered reasons are pre-textual.[11]

In asserting that they have made out a *prima facie* case, Plaintiffs cite to the same

allegations made in their equal protection claim: that Hurricane Harvey victims' benefits under

the TSA program have been extended 7 times to their 3— which amounts to two additional

months, and that financial assistance to Hurricane Harvey was approved much more quickly and

at a much higher amount.  Given the differences in the disasters, including the number of people

and the amount of property affected, the type of damage and the logistical differences in the

locations where the hurricanes hit, I have grave concerns that the Plaintiffs have made out a

*prima facie* case, despite the low threshold for doing so. Assuming they have, FEMA has

rebutted their claims by providing detailed evidence regarding the scope of damage caused by

Hurricanes Harvey and Rita versus the scope of the damage to Puerto Rico, the difference in the

type of damage, the difference in the number of persons affected and the logistical difficulties as

---

[10] In their initial briefing of this claim, Plaintiffs simply made a conclusory statement that for the same reasons they should prevail on the equal protection claim, they are likely to succeed this claim.  It is not until there supplemental brief filed after the hearing that Plaintiffs flesh out this argument. As pointed out by the Defendants, Plaintiffs have failed to raise a number of legal arguments in their initial briefs—instead, they have routinely chosen to make new arguments and cite new authority in their reply or supplemental briefs. Generally, I do not address matters raised for the first time in supplemental pleadings, however, given the importance of the issues raised by the Plaintiffs, I have done so in this case. Should Plaintiffs appeal this decision, I strongly suggest that they be more diligent in regards to their briefing to the First Circuit, which strictly enforces the rule that arguments raised for the first time in a reply brief are deemed waived.

[11] For purposes of this Order, I will accept Plaintiffs assumption that the *McDonnell Douglas* burden shifting analysis applies to this claim. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973).

the result of Puerto Rico being an island located well off the United States mainland. FEMA has also provided a breakdown of the amount of financial assistance given to Texas (Harvey), Florida (Irma) and Puerto Rico (Maria), which establish that aid to Puerto Rico has been in line with the aid provided to Texas and Florida. Additionally, I do not discount the fact that FEMA terminated the Plaintiffs' TSA, at least in part, because the Governor of Puerto Rico did not seek an extension beyond June 30, 2018. The burden thus falls on the Plaintiffs to establish that the Defendants' reasons are pre-textual. Plaintiffs argue that if I find that the Defendants have met their burden (as I have), they should be allowed to file a supplemental brief for purposes of establishing pretext. While Plaintiffs will have the opportunity to develop their claim going forward, whether they are entitled to an injunction is based on the record before me as it currently stands. Based on that record, I cannot find that they have established a likelihood of success on the merits of this claim.[12]

### Plaintiffs' APA Claims

Plaintiffs assert that Defendants conduct violates the following provisions of the APA: (1) section 706(2)(B), because FEMA's termination of the TSA program as to them is contrary to law; and (2) section 706(2)(A) because FEMA's termination of the TSA program as to them without any plan to transition them into the THA program is arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law. Additionally, Plaintiffs assert that pursuant to section 706(1), the Court should compel FEMA to continue the TSA program as to them until it provides eligible evacuees sufficient THA housing. Defendants argue that this Court should

---

[12] In support of many of their claims, Plaintiffs cite to *McWaters v. Fed. Emergency Mgmt. Agency*, 436 F. Supp.2d 802, 816 (E.D. La. 2006), in which the court found a protectable property interest in THA benefits because it determined that once an applicant was deemed eligible, FEMA did not have the discretion to deny assistance; the court also found that FEMA's discretion was further limited by the Stafford Act's non-discrimination provision. However, it has been widely recognized that the holding in *McWaters* has been abrogated by the Fifth Circuit's ruling in *Ridgely*.

deny Plaintiffs' request for injunctive relief under the APA for lack of jurisdiction because, as to these non-constitutional claims, there has been no wavier of sovereign immunity.

When bringing suit against the United States or its agencies, a plaintiff must establish that the United States has waived sovereign immunity with respect to its claims. *FDIC v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."). "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text." *Lane v. Pena,* 518 U.S. 187, 192, 116 S.Ct. 2092 (1996).  I find the Defendants well written and comprehensive discussion of the issue of sovereign immunity compelling and on point and therefore, adopt it in *toto*.   In so doing, I reiterate my previous finding that FEMA's actions under the Stafford Act with respect to granting both the section 403 and 408 assistance are discretionary.  The Stafford Act's discretionary function exception to governmental liability provides that the United States will not be liable for:

> [A]ny claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a Federal agency or an employee of the Federal Government in carrying out the provisions of this chapter.

42 U.S.C. § 5148.  This discretionary funding exception encompasses FEMA's decision to terminate the TSA program as to the Plaintiffs and this Court lacks jurisdiction to address Plaintiffs' APA claims. *Accord St. Tammany Par., ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 325–26 (5th Cir. 2009)(Stafford Act, its regulations, and related agency guidance do not give rise to mandatory duty. They instead permit discretionary, policy-oriented choices that cannot be basis for the court's subject matter jurisdiction).  Therefore, Plaintiffs are not entitled to injunctive relief based on such APA claims.

I have found that Plaintiffs have failed to establish a likelihood of success on the merits of any of their substantive claims. Under these circumstances, I find that they are unlikely to prevail on their claim for a declaratory judgment.

## Risk of Irreparable Harm

"Only a viable threat of serious harm which cannot be undone authorizes exercise of a court's equitable power to enjoin before the merits are fully determined." *Massachusetts Coal. of Citizens with Disabilities v. Civil Def. Agency & Office of Emergency Preparedness of Com. of Massachusetts*, 649 F.2d 71, 74 (1st Cir. 1981) (citing *Parks v. Dunlop*, 517 F.2d 785 (5th Cir. 1975)). "A preliminary injunction will not be issued simply to prevent a mere possibility of injury. A presently existing, actual threat must be shown." *Id.*

Although Defendants attempt to do so, there can be no serious dispute in this case that the Plaintiffs have established irreparable harm. The Plaintiffs are evacuees from a catastrophic natural disaster[13] in which they have lost most, if not all, of their real and personal property and been forced to locate to areas thousands of miles away.  At this point, the Plaintiffs and other potential class members who have not been transitioned into the THA program do not appear to have any place to go once the TSA program ends.

## Balance of Equities

The balance of hardships also tips considerably in favor of the Plaintiffs.  I agree with the Plaintiffs that they will suffer disproportionate hardship given that to date, they have not been able to secure alternative housing and therefore, may well be rendered homeless.

---

[13] Puerto Rico's death toll from Hurricane Maria has recently been revised to 2,975, making it one of the deadlines national disasters in United States history,

## Public Interest

The public interest is a more neutral factor. As the Defendants point out, it is in FEMA's interest to maximize the resources for providing assistance to the public during national disasters. It is also in the public interest that FEMA be allowed to act in accordance with its statutory mandate.  At the same time, as pointed out by the Plaintiff, there is a strong public interest in helping to provide for the well-being of its citizens, particularly those who have been victims of natural disasters.

### Plaintiffs Request for Preliminary Injunction is Denied

While there are factors that weigh in the Plaintiffs' favor, I have found that they are unlikely to succeed on the merits of any of their claims. Given that likelihood of success on the merits is the touchstone of the preliminary injunction inquiry, their request for injunctive relief is denied. While this is the result that I am compelled to find, it is not necessarily the right result.  However, the Court cannot order that Defendants to do that which in a humanitarian and caring world should be done-- it can only order the Defendants to do that which the law requires.

## **Conclusion**

Plaintiffs' Emergency Motion for A Temporary Restraining Order Or Preliminary Injunction And Declaratory Relief (Docket No. 2) is ***denied*** as to their request for a preliminary injunction.  By its terms, the TRO has been extended until August 31, 2018.  While by my Order I am vacating the TRO, Plaintiffs and the other evacuees will need time to make alternative housing arrangements.  Therefore, I am ordering that the Defendants and their agents refrain from terminating the program which provides the payment for shelter for the Plaintiffs (including the class) until midnight September 13, 2018 (*i.e.*, enabling Plaintiffs and the class to stay until checkout time on September 14, 2018).  I strongly urge the parties to work together to find

temporary housing, or other assistance to the Plaintiffs and other members of the class prior to that date.

**So Ordered:**

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**